It is 24-33, 20-40, Quackenbush v. Honda. Good morning, Your Honors. If it pleases the Court, my name is Mark Greenstone. I'm counsel for the plaintiff appellant, Quackenbush, et al. And if I could reserve three minutes for rebuttal. Sure, just keep your eye on the clock. Sure. There were a number of issues raised on appeal. Unless Your Honors have questions about other issues, I wanted to address three this morning. Sure. One is why it was a legal error for the District Court to dismiss its summary judgment, the roughly 40,000-person new and used purchaser class. Two is why, notwithstanding defendants' arguments to the contrary, the verdict in favor of the Illinois repair class should be upheld. And the third issue is why the District Court abused its discretion when in determining fees it slashed all fees for pre-summary judgment work, which was the bulk of the request, by 94%. That would include fees for work that counsel performed before the class certification as well? Yes. Okay. As to the first issue, when this case went to certification, the Court certified three classes, a California repair class, an Illinois repair class, and an Illinois new and used purchaser class, which was the largest, about 40,000 class members. That class was comprised of people who had purchased class vehicles with defective VTC actuators, but who had not yet had them repaired. And when it certified that class, it held that the damages model presented by plaintiffs, which used a cost of repair analysis to estimate damages, was appropriate both under substantive Illinois law, as something that was a permissible form of damages, and was appropriate under federal Rule 23 jurisprudence, Comcast and new and so forth, as being tied to plaintiff's theory of liability. A year and a half later, when this case went to summary judgment, the Court did a 180. But notably... Well, the result may have been 180, but the analysis was not. He didn't say that under law it wasn't theoretically possible. He said you didn't have any evidence to support an alternative measure of damages that you offered up. Actually, Your Honor, I would beg to differ on that. When it went to summary judgment, the judge didn't say, you haven't raised a disputed material fact as to damages. What Judge Alsup said was, he said, you know, this model of damages that you have, which uses the cost of repair, I'm not going to allow that to proceed to the jury for a class of people who didn't pay for repair because that would give a windfall to people. Instead, what you should have done is, you should have discounted the cost of repair by the probability that the defect would manifest. That illustrates just what I was saying, which is that he didn't rule out it as a theoretical possibility, but you came in and said the people that never got it repaired and may never have suffered any rattle to begin with were damaged by the cost of repair, and I don't understand any logic in that. So he didn't accept that model. He didn't say as a matter of law that they might not have had a claim, but you didn't offer up a model that he would accept. Here is the logic in that. What Judge Alsup did is refocus where the harm occurs. Our theory of this case was that people were harmed at the point of purchase. But how much were they harmed? Were they harmed by the cost of repair? Yes. I don't think so. Tell me how somebody who bought a car who never experienced the problem was harmed by the cost of repair. Did you submit any evidence at all of how the resale value of the car would have been diminished by the cost of repair? We did not use a diminished value model. However, the cost of repair model is something that's been accepted. In the Nguyen case, this was actually the debate in Nguyen, was whether people could use a cost of repair model. The defendant in Nguyen basically made the same argument that Judge Alsup made, that, look, giving people who haven't experienced the problem, or who drive the car for 30,000 miles and then experience the problem, is giving them a windfall. The Ninth Circuit said in Nguyen, no, the cost of repair is an appropriate proxy for damages because you're looking at the point of purchase and what would restore the person the benefit of the bargain. One thing that would do that is to give them the money to get rid of this defective part because whether it's malfunctioned or not, you're entitled to a non-defective thing. That's what you've bargained for. So my answer to you, Your Honor, would be that this is a judicially recognized way of arriving at the harm that occurs at the point of purchase. I think this court— Wouldn't that be better addressed by an expert opinion on diminution in value based on the probability that the noise is going to manifest itself at some point down the road and therefore the purchase price of the car should be discounted, taking that factor into account? Wouldn't that be a better model or measure of damages? Your Honor, I think that's a hard question to argue whether that's better because that model is a very sophisticated model that requires a lot of assumptions to be made whereas the cost of repair model is a simpler model. So I don't know. But it's a much less precise model. Right. So one of the arguments you made today and also in your briefing is that Judge Alsop did one thing at class certification and you think that he shifted gears here at the summary judgment level. But it seems to me that the—I think Judge Tallman and I may be sort of pulling on the same thread because it seems to me that the cost of repair is a component of the measurement, but you would need to know, as a juror, I think you'd need to know what's this going to cost and also how likely that I'm going to have to pay it in order to figure out what a reasonable buyer would want by way of discount. You know, I would respectfully disagree because when you buy a product, if you believe you're buying a product that's non-defective and you learn— But it isn't right there. Aren't we assuming that we're in a marketplace where everybody knows everything and so this class, this model of Honda has this defect that sometimes manifests and sometimes does not, right? But in this car, this hypothetical car, it hasn't manifested. But as a well-informed consumer, I think it might, so I might want a discount. I think that's what Judge Tallman and I are both positing. And what I'm saying is that's one way to look at it. But another way to look at it is what did you bargain for? You bargained for a car that didn't have a defective part. But your problem is maybe I got one because not all these cars started to rattle, right? Well, that's actually an important distinction. Okay. You got a car with a defective part. It may not have manifested, but you got a car with a defective part, and you have a right to have a car that doesn't have a defective part. So your theory is I have a right to have a car that doesn't have this latent possible rattle. Correct, correct. And the measure of damages for that, I'll go with you on that, but the measure for damages on that still does not strike me as a repair cost. Judge Alsup said if you gave everybody that repair cost, that would be a windfall for some. Well, I don't think it would be because— And you think it's not a windfall, I think, because what the buyers were entitled to was a car that didn't have even a possibility of developing a rattle.  And the way to get there is to fix it. Correct. And I think—and I know this is a summary judgment opinion, but I really think it was kind of revisiting the correctness of the model in a certification way. But if you look at Nguyen and the way it looks at the issue, the Nguyen court said, look, this would be different if the plaintiffs were saying the injury was the post-purchase manifestation, if that's what they were seeking compensation for. But they're not. They're seeking compensation for the harm that occurred at the point of purchase. I appreciate that. Let me ask you a hypothetical. If the cost to repair is $700, somewhere down the road, your position would be that all 40,000 plaintiffs are entitled to recover $700 because they overpaid for the car by that amount of money? Yeah. My position would be that, yes, they are entitled to recover that money. Whether or not it ever manifests itself or not. Correct. Because they were entitled—if we show that this is— Can you just finish the sentence? Because they were entitled to a car that doesn't have the latent defect? Correct. They were entitled— That might materialize. Correct. Okay. They were entitled to a non-defective thing. Yeah. I appreciate the nuance. Thank you. One way to appreciate this, if you imagine a defect that's more extreme, an airbag that explodes in your face, the whole Takata thing, that happened in a very small percentage of vehicles. But I think we could all see that nobody would want a car with one of those airbags. If anybody had that car, if anybody had that car with that defect, and now we're talking about a real safety defect, not something that's annoying, but be that as it may, then your premise is that all those purchasers are entitled to a car that doesn't have that potential defect, and so they're entitled to the repair cost to make sure that it's fixed and they don't have an airbag that's going to malfunction.   I appreciate that. I don't think that's different than what you argued in your briefing, but I appreciate your advocacy. And so your best case law for this is Nguyen? I think the best case law would be Nguyen combined with the Illinois cases we cite in our briefing that recognize— Which Illinois cases do you think cut your way? Because I've looked at them and I'm coming up short. There are—Kimby-Carters recognizes the general proposition that people can recover for the benefit of the bargain under Illinois law. There's a series of cases that analyze property issues, Posner v. Davis, Dietrich v. Jones, that discuss the fact that a cost of repair is one way of compensating people for the benefit of the bargain. That was also recognized in Grease v. Corey Pools, which was a warranty case. So I think those cases combined with Nguyen are the most powerful on this point for us. So Nguyen is a class certification case. Yes. And it describes its terms, and I don't really understand the mechanics, but a potentially catastrophic defect. My problem is applying that to the facts of this case, where the experience rate was pretty low. There were no illustrations of the catastrophic defect. There was a theoretical presentation as to how it could lead to a parade of horribles. That doesn't seem to me to be a particularly close fit to this. Your Honor, I believe that if you look at Nguyen, it isn't the nature of the defect that drove the decision. It is the legal premise that they were claiming they bought something that was defective and they were focused on the point of purchase. Suppose the defect is that in some small fraction of cars, the glove compartment door will rattle. I don't want a glove compartment door that will rattle, but I'm not sure that means everybody who buys that car gets a replacement of whatever the latch is. And I think that's the concern that the district court reflected here, that this really does seem to be a windfall in terms of an economic benefit to the members of the class that doesn't fairly reflect the diminished bargain that they alleged that they didn't get the benefit of. Your Honor, I would push back in two ways. One, I would say I think if you can show that it's material and that it's a defect, yes, you're entitled to a car that doesn't have that. I would also push back on the notion that this is a case that's just about a noise, and that really kind of segues me into the second thing I wanted to address was that the verdict in favor of the repair class should be upheld. I hope you're going to leave time to talk about attorney's fees. What's that? I hope you're going to leave time to talk about attorney's fees. Okay. Your time. Okay, if I could just. I can address that now if Your Honor would like. Our issue with attorney's fees was really rather clear cut. We acknowledge the judge has a lot of discretion relative to attorney's fees.  Here was the problem. In this case, Judge Allisop said, look, your Illinois new and used purchaser class was dismissed at summary judgment. So for all the time prior to summary judgment, I think you need a cut because you didn't separate out the work you did for that class. And what I'm going to do is I'm going to. I think that's right. But am I right that you took a 30 percent haircut in your own calculations, right, in part because you didn't prevail on all the claims? Yes. Okay. We voluntarily did that. Because you have to measure it some way, right? You have to measure it some way. You're going to get attorney's fees for where you prevailed and not where you didn't prevail, and that's a tough measure. It's hard to do the surgery after the fact. Right, right. We also segregated out all the work done on California claims. Here's the problem with what Judge Allisop did. With the roughly $3 million incurred before summary judgment, he said, well, you prevailed on this small repair class. You didn't prevail on this big other Illinois class, so I'm going to look at the relative size and cut it by 95 percent. And he said it was. . . You said big. You're talking about the number of class members. Yes. He looked at the relative sizes of the class, and he said, you know, we're going to cut it by 95 percent because that's the relative proportions. And here was the problem with that. As we said in our briefing, all of the work done from the time we filed the complaint through summary judgment for these two classes was identical. He disagrees in his opinion, and the reason it was an abuse of discretion is, in all due respect, he uses an example that never occurred. How can all of the fees be identical up to summary judgment for all three? Can you back up and explain that to me? I can explain that. That seems improbable to me. I can explain that. We didn't differentiate in terms of liability or damages between the classes. We hired damages experts to show how the rattle could potentially harm the engine and so forth to show it was material. We had a damages expert who measured the cost of repair. The one example Judge Alsup gives is, he says, we used a statistical analysis and repair receipts. It was statistical analysis to support one class, the new and used purchaser class, and repair receipts to support another. It actually didn't happen. We did not introduce a statistical analysis. To the extent we used repair receipts, it was simply to show what harm could occur downstream to show this was material. We did not differentiate between the classes. That was ultimately the problem he had with us at summary judgment. But it just, the work was truly the same work. And he didn't do any analysis either. He just said, I'm going to base it on the proportionate size of the class, and I think it's clear. Is there any case law that approaches it that way? He has a lot of discretion. I know, I know. As you know. Is there any case law where we have affirmed the reduction in fees on that basis? Because one claim prevails and the other doesn't, and a district court looked at the size of the class as opposed to the hours of work. I'm not aware of it. And I believe that Illinois law controls the analysis here. And if you look at Grove v. Huffman, that's clearly, applying a strict formula like that is clearly not the way it is supposed to be done. I struggle to find a strict formula, and we certainly have case law talking about that, I think. But you offered up a 30% reduction. What's the theory behind the 30% reduction? The 30% reduction was because when we went through, we wanted to make sure we were taking out administrative things and things like that, and also there were a few briefings. That were unique to one case or the other, right? It cannot be all identical. Well, no. The 30% was to address the California class. That's what it looks like. Right. Relative to the Illinois class, it was identical. If you look at our cert brief, we talked about Illinois in one section. We didn't talk about the Illinois new and used purchaser class and the Illinois repair class. We didn't. But your position was that it was identical, and then you took 30% off. So now you've explained you think that the legal work was identical, but you docked it by 30% because of the California. Correct. All right. I wanted, unless there are more questions on the fees, I wanted to move quickly to why the judgment for the repair class should be affirmed. There are two arguments, two primary arguments the defendant makes. One is that it wasn't substantial evidence to uphold the verdict. And the other was that judicial estoppel should have been invoked to graft a safety standard onto the Illinois jury instruction. With regard to substantial evidence, there was literally a mountain of evidence from which a jury could conclude that this was a material defect. And I want to address specifically the notion that this is just a noise. This is what the parties thought about. But we're very familiar with this standard. Do you want to save the rest of your time? Sure. Okay. We'll hear from opposing counsel.  Thank you, Your Honor. Donald Faulk for Honda. Before I begin, I just want to clarify the procedure here. Should I plan on addressing all of my issues in this block here, or will I have a little time on rebuttal on the cross-appeal issues? Happy to do it either way. I just want to know what I'm up to. This is it. This is it. Okay. You've got 20 minutes, and the time will come. I hope the other side is restricted to his appeal issues, but that's up to the court. The theory, this case at bottom is about a perpetual warranty for whenever an automotive part fails at any time, no matter how long the part lasts. That someone who replaces it gets full freight. That's their theory. That's what their expert said. He said if this part doesn't outlast the car, it's defective. That's it. That's a theory this court rejected in Grdziski, but that's what they went to trial on. And there's lots of things wrong with the judgment that we'll address talking about the cross-appeal, where people who did get repair, who did a repair, were given reimbursement no matter how long or what else happened. And we think that that's a failure. But in what he's talking about now, what they're looking at now is a perpetual warranty for people that didn't have a problem, people that have years and years of use, no problem yet, most likely are never going to have a problem. And yet they claim that they are entitled to the full cost of repair. Now, let me just address a couple of things on that side, a couple of things. And I think, you know, the most important thing, we look at their reliance on when. And when, you know, goes as far as it goes. But there's a big difference between class certification and the standard on the merits. This is what happens. This court must have seen this a hundred times. Certainly I have. I make an argument. The court says, eh, that's the merits. Take a look at that later on. It's good enough. It's common. It's good enough. It's a common method. It's got some connection. Good enough for now. But being common doesn't mean it's right. And so that's not necessarily enough. In fact, it's often not enough. And so the court was right to insist that the plaintiffs needed a model that accorded with Illinois law and in this circumstance. For my part, I think that's right. I'm not persuaded that there's this discrepancy between the class certification ruling and then the merits ruling. But what I think is interesting is the other argument, which he's explained in his briefing, but he advances again today, of course, which is at the point of purchase, they're entitled to a defect-free car. We can talk about what defect-free means. And his point, could you respond to the example regarding had that defect been a real safety defect, had it been an airbag, why wouldn't it be reasonable for everybody, all the purchasers, to want to incur that repair cost to make sure that they're not going to develop the latent defect? Well, that's exactly what would be proved through an adequate diminished value presentation. And some things, yes, it may turn out to be the same. That's one way you could do it. And I think Judge Tallman and I both indicated that this wouldn't do it, right? You'd need another component to make that analysis, right? Excuse me, Your Honor. Yes, you'd need another component. The Illinois cases allow cost of repair when the roof already caved in, but they don't allow cost of repair when the roof hasn't caved in yet. I mean, those are all his examples involve cases where something is manifested. He has to look at this differently, and you are here for argument after all, so if you could help us engage in it, it would be helpful. Yeah. You're not saying that if they had shown that there was a likelihood that the airbag is not going to work, that a consumer has to wait for the airbag to not work before seeking the repair? He's really focusing on the time of the purchase, right? I understand that. But what the Illinois courts do is they focus on the diminished value at the time. Whether it's at the time of the purchase, usually, in fact, the only model that any of the cases talk about is diminished resale value, which is at the time of the complaint. Now, could you do a diminished value analysis that got to the same place? You could, but they didn't. But hence my question. I think you do look to Illinois law. And as I said, I think I'm coming up short looking at Illinois law to tease out this other theory that he wants us to explore, which is at the point of purchase. Do you think there's any Illinois authority that cuts his way? I have not found any, Your Honor. What Illinois law distinguishes between manifested injury and other types of injury, including the risk of a future harm, which you can call it a defect, but it's a risk. It's a risk that something will go wrong. You can label, put any label you want on something. But even the court in trans, you didn't pick this apart and said the risk of a future harm is not the same. There may be an associated present harm with that risk, but the future harm that is risked is not the same as the injury at the present. And that's what Illinois looks at. Illinois makes this distinction between manifested injury and future harm. Which cases from Illinois case law would you like us to look at? I mean, I think the Miller case that adopts the General Motors door latch case as a correct statement of Illinois laws is the right one. Every single one of these cases, if there isn't a manifested injury, it looks at diminished value, a current condition affecting value. Now, are you saying if they had done the right analysis, could they get to the same place? Not in this case, Your Honor. I think it would be preposterous to think that they could get to the same place. If the defect was that the car would explode, maybe they could get to the same place, but they'd have to do an analysis of the current condition's effect on the current value. You cannot just say that this is the cost of repair and people who need the cost of repair now. I wasn't trying to ruin your morning. I'm just trying to get your response. I'm sorry, Your Honor. I'm not trying to ruin yours either. No, that's fine. Your advocacy is helpful. I'm curious about the attorney's fees award.  Do you want to pivot to that? Absolutely, Your Honor. They're saying that the district court abused its discretion because it gave them only a million dollars for getting a million-dollar result. No, they're saying there was an abuse of discretion because the measure that the judge used to reduce the fees, and I don't think there's any pushback that the judge has a ton of discretion and he's going to reduce the fees because they didn't prevail on all their theories. They're concerned about the measurement that the judge used, the per-class member measure. Your Honor, I think we're looking at the wrong end of the telescope here. This court has said recently in the Lowry case, and it follows the Hensley v. Eckerhart standard that the district court quoted, except in extraordinary cases a fee award should not exceed the value that the litigation provided to the class. The district court cited the Hensley standard, which the Illinois courts have adopted. The district court said, quoting Hensley, where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained. And that's totally legitimate under Illinois law. Excuse me, Your Honor. Sure, and those are pretty black-letter principles. And so then we look at, and I think this goes to one of my colleagues' questions, I think it was Judge Tallman, on the class that prevailed, on the claim that prevailed. Correct. They're looking at a block of work, up to summary judgment, that opposing counsel has said was common to each of the classes. So what about that? Well, they assume the risk of not differentiating out the work for the losing parties and the winning parties. He doesn't have to differentiate. If he said he would have needed to do that work in order to achieve the result that was successful. The district court's observation of the case, and as he said, is looking at the whole progress of the case and the dynamics of the case, I think, is the district court's word. As he said, they should have at least tried. They should have done something. They can't just come in here and say everything that is somewhat related is unavoidable. And regardless, the district court is entirely entitled to tailor the fees to the results obtained. And they got 86%. Wouldn't your position be, to answer Judge Christen's question, that even if they segregated the work, it should be limited to 6% of the fees they incurred leading up to summary judgment, because that's the only percentage of the class that prevailed? Your Honor, I think in reaching a result that gives them roughly the same benefit and fees as they obtained for the class members, that what the district court did was entirely acceptable. Yes, it's difficult surgery. It's difficult surgery, as Judge Christen has said. It's a pretty dramatic cut. 95% or 94%, whatever it actually worked out to, is pretty dramatic. It is a dramatic cut on that part. But overall, the discretionary award of fees was quite reasonable. It was almost as much as they got for the class. They got a million bucks here. Why doesn't it need to be tied to the amount of effort that went into those claims? That's why it seems to me to be, I think they have case law on this. As long as they had to do that work, if it's the same work and it benefited the claim that prevailed and also was invested for the claims that didn't prevail, I think it's fairly included under our case law. Are you pushing back on that? It can be included, Your Honor, but I don't think it's required to be included. I think the court has discretion. Otherwise, there would be no limits on the fees that could be awarded for any case. Going back to Judge Tallman's question, if you think, was it 6% or 4%? I thought it was 6%. Then it seems to me that you would want to reduce all of it by that, even the work fairly incurred on the claim that was successful. No, I don't think that's right, Your Honor, because at a certain point, those people were out of the case at summary judgment. That's where the court drew the line afterwards. You only have two classes. Do you have any case law where this particular approach has been used in a class action? Your Honor, I don't know about this particular approach. I'm not aware of any court that used that precise approach. I'm aware of some massive haircuts, including in the Davis case that they cite, where the court took 50% here and something there on individual cases where you don't have the huge incentives they had. They would be richly rewarded if they hadn't lost the bulk of their case, but they did lose the bulk of their case, and the district court is entitled to take that into account. That's the end result that we should be looking at here, and he got to a completely reasonable end result in light of the benefits that were obtained for the small proportion of clients that prevailed. Judge Clifton, do you have other questions? I want to go back to where you were starting about this perpetual or permanent warranty. Yes, Your Honor. You argue that there's a useful life of 150,000 miles, and indeed at one point your brief argued there was unrebutted evidence at trial that showed that the useful life was approximately 150,000 miles. I've got a series of concerns or questions about that. The first is the source of that. What evidence was there at trial about useful life? Well, there's just testimony from one of the Honda witnesses saying that the benchmark was 150,000 miles, which I think is a little weird. What he actually said was I think it's customary internally to be about 150,000 miles. Internally suggests that that's maybe what Honda looks at, but not something that's communicated to anyone else or not anything that the class members are expected to know. Is that true? I don't know whether it's communicated. There's nothing on the record about it being communicated.  The evidence you just pointed to, the only evidence I could find, was that comment by someone who acknowledges he's not himself an engineer, so he's not offering an opinion. He just says internally we use that number. Is that the evidence that you're describing? It's a fair description of the evidence, Your Honor, but these vehicles don't have perpetual useful lives. You're looking here at a warranty that goes past what anybody would expect to get. What evidence was there that this defect was tied to the number of miles? It sounds like everybody, including Honda, identified this as a defect kind of from the outset. They may not have discovered it at the outset, but it's not something like tires that are going to wear out over 30,000 or 40,000 miles. Is there any evidence that suggests that the mileage had anything to do with the defect? Well, there's a massive amount of evidence of that. The structure of the problem itself, the problem only manifests when this pin mechanism that's supposed to keep the VTC actuator from moving around until oil gets there, when something goes wrong with that, and that happens with wear. That's why the record shows even the class rep buys a car at 93,000 miles, and this doesn't show up 22,000 miles later. Now, sometimes it showed up earlier. That's why there were warranty issues. That's why Honda was looking at this. But all the evidence showed that there was a relationship between how much you used it and how much this problem cropped up. It didn't crop up in most of the vehicles, but the farther you go, you go 150,000 miles, and all kinds of things crop up. Anyone who's had a car that old or a truck that old or bought something that old, you don't know what the problems are going to be, but you know there's going to be something, and this is one of those things. When did a portion of the class reach that useful life figure that Honda identified? I don't have a figure for you, but it's, you know, I would say somewhere in the repair class somewhere between 5% and 10%, but that's just a guess from looking at the spreadsheets, Your Honor. It's a fair number. It's not a de minimis number, and it's something that I think will matter. It's likely to matter. We'll find out in a couple of months whether it matters under the Supreme Court's decision in the laboratory corporation that that would bar the certification of the class or else, you know, we were constantly presented with an issue where either something, we say there's not common proof, and it's like, well, if it's not common proof, they'll lose a trial, so you can't have it both ways. Why is it that if 5% to 10% of the class members have reached this 150,000-mile point or above, you argue that defeats the claim of the entire class, including the 90% to 95% of the class members who still were within Honda's definition of useful life? Well, supposedly if the class is over-certified, their claims rise or fall together, and if you don't prove it for the whole class, you don't prove it for the whole class. What makes that the case? I mean, you cite a case in your brief, the Connecticut retirement plans case, but that's a case where the issue went to the merits, and here I don't see how this goes to the merits. That was a securities case, a fraud upon the market case, and that's not this situation, is it? Well, it's not a fraud upon the market case, but the principles are the same, Your Honor. So somebody who experienced a defect at 90,000 miles shouldn't be able to get the benefit if the plaintiffs prevailed because there are some people, 5% to 10% of the group, that are over 150,000 miles, and what's the logic in that? Well, the logic is, and I think, you know, the normal response would be to decertify the class that never should have been certified, and that's what should have happened here, but the logic of it is if you don't have common proof that proves it for everybody, then there's a problem, and they don't have that. Other than the case you cited, which doesn't seem to apply? I don't understand any logic in that. So here's your shot to try to persuade me why it's logical. As we say, Your Honor, it is usually looked at as a class certification issue, but if you're going to sweep people into the class, then it would stand to reason that if you can't prove it for the class, you lose, and if the court doesn't buy that, I understand that. I'd like to spend, if I may, a couple minutes talking about materiality under their new standard where they switched horses at the middle of trial after having relied on the presence of a safety hazard as a sole method of common proof at class certification. Now the problem is when they got there, they switched horses, but they didn't switch saddles. Their only shortcut was to use safety to prove materiality across the class, and we agree that works if they could prove safety. We fought on that, but if they could prove safety, that's a recognized means of proving class-wide materiality. But otherwise, and the Illinois cases are quite clear on that, or the Seventh Circuit cases applying Illinois law at least are very clear on this, that otherwise, if you don't have a shortcut like that, you have to show how consumers as a whole would respond to the value of a certain misstatement. Here the failure to disclose that a minority of vehicles will have this actuator issue somewhere down the road after the warranty period, because that's all we're talking about here. So somewhere from, for most cars, 60,000 miles up to 200,000, 300,000 miles, this may happen. And you could do a study like that, but they didn't do it. They don't have any, they didn't come in with any evidence of consumer preferences. They didn't even say what the actual omission was if it wasn't the safety defect. The only thing they presented was that people in the class that prevailed paid out-of-pocket themselves for the repair. So they must have thought it was serious enough to pay for. It was serious enough to pay for, Your Honor, but that's not the standard when you're trying to see, I mean, that could be applied to any mechanical issue anywhere. Why isn't that the standard? It was material to them. It was annoying enough to them. Why isn't that the standard? It's material when it happens, but if you're looking at the value at the time of purchase, you have to look at materiality at the beginning. That's what the courts say, the fact that that's what the Illinois courts have said. You can't just rely on the hindsight of a class representative who says, you know, when it happens, it matters. But you're talking here about something ex-ante, and they didn't engage in any of the kind of thing, which is usually a consumer survey. That's what the courts say they need. Well, you're down to the 6% that actually paid for the repair. It mattered enough to them. I don't know what logic there would be in saying it wouldn't have mattered to them at the beginning. If they actually went to the trouble of getting the repair, which is a pain, as I suspect most people have experienced if you take your car in for a repair, and paid out of their own pockets for it, it's hard for me to understand how that's not something that they can fairly claim compensation for. Well, Your Honor, all I can say is that the cases differ on this thing. The fact that it makes a difference to some people doesn't mean that it counts as material ex-ante, which is the right measure here, for everyone. We're not talking about everyone. We're talking about the limited group that actually paid to cure the problem. So to tell me it doesn't count for somebody who doesn't get the repair is not an answer. This is a group composed of people that paid their own money to get it fixed. So how could that not be material to that group? Again, it looks at it as a – I don't want to repeat myself further, Your Honor. I think it's looking at the wrong end. I see my time is up, and I will submit. Thank you. Thank you, counsel.  Madam Clerk, could you put a minute on the clock? Thank you. Just two things I want to make sure we walk away with clarity. There's been some discussion about whether there was evidence presented. This is more than a rattle. There was reams of evidence presented on that point. ER-535 was Honda's tensioner study done before the class period, where it concluded that a rattling VTC will cause a tensioner to fail. SER-390 is the testimony of Honda's expert, where Honda's expert admitted, I asked him if the teeth were worn down such that they were nonfunctional, the teeth of the tensioner, could that hasten the failure of the other components, such as the timing chain tensioner itself? Answer, if you wear down that component, you're going to cause accelerated wear and problems and cause accelerated failure of parts? Absolutely. So the presentation was consistent, and there was significant evidence that this was more than a rattle. That was the contested matter. So I just want to make sure that fact is clear. The other thing I wanted to cover very quickly, Your Honor asked whether there were any Illinois cases that looked to the point of purchase. You are out of time. You're over time. So if you want to call our attention to other cases, please do so. I would say Connick and Perona both look to the time of purchase. Okay. Thank you for reminding the clock. I know it's nerve-wracking. Thank you both for your arguments today. We appreciate your advocacy very much. Thank you, Your Honor. Thank you.
judges: TALLMAN, CLIFTON, CHRISTEN